**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

KIMBERLY C.,[1]
    Plaintiff,

        v.                                         Civil No. 3:20cv280

KILOLO KIJAKAZI,[2]
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability benefits under the Social Security Act. Kimberly C. ("Plaintiff"), forty-seven years old at the time of her benefits application, previously worked as a school bus driver. (R. at 98, 199.) Plaintiff suffers from type two diabetes, osteoarthritis, high blood pressure, and sciatica and has alleged that these ailments cause her pain, rendering her unable to work on a sustained basis. (R. at 34-35.)

On September 16, 2016, Plaintiff applied for disability insurance benefits. (R. at 98-99, 170.) On June 11, 2018, Plaintiff also applied for supplemental security income. (R. at 10.) After Plaintiff's applications were denied, and after exhausting her administrative remedies, Plaintiff seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]    On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Acting Commissioner Kijakazi should be substituted as the defendant in this suit.

the Court by consent of the parties, pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross motions for summary judgment, which are now ripe for review.[3]

Plaintiff argues that the ALJ erred in her finding that Plaintiff is "not disabled." Plaintiff contends that the ALJ erred in assessing (1) Plaintiff's subjective complaints of her pain; and (2) the medical opinions of Nurse Practitioner Hammel, Dr. McGuffin, and Dr. Rutherford. (Pl.'s Mot. for Summ. J., ECF No. 18, and Br. in Supp. at 10-19, ECF No. 19 ("Pl.'s Mem.").)

For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (EFC No. 18), GRANTS Defendant's Motion for Summary Judgment (EFC No. 20), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On September 16, 2016, Plaintiff applied for disability insurance benefits, alleging disability due to type two diabetes, osteoarthritis in her knees, high blood pressure, and sciatica. (R. at 98-99, 170.) On June 11, 2018, Plaintiff also applied for supplemental security income. (R. at 10.) In both applications, Plaintiff alleged disability beginning March 29, 2017. (R. at 10, 170.) Plaintiff later amended her alleged onset date to September 21, 2017, reflecting Plaintiff's last day of work as a school bus driver. (R. at 34.) The Social Security Administration denied Plaintiff's claim initially on July 19, 2017, and again upon reconsideration on February 12, 2018. (R. at 124, 132.) Plaintiff requested a hearing before an ALJ, and the hearing was held on February 27, 2019. (R. at 27-59.) On April 30, 2019, the ALJ issued a written opinion, denying Plaintiff's claim and

---

[3]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 7-26.) Plaintiff requested review of the ALJ's decision and on February 14, 2020, the Social Security Administration Appeals Council denied Plaintiff's request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005 (per curiam)). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488

(1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On February 27, 2019, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 27-59.) On April 30, 2019, the ALJ issued a written decision, finding that Plaintiff did not qualify as disabled. (R. at 7-26.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 7-26); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of September 21, 2017. (R. at 13.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: osteoarthritis, lumbar spine degenerative disc disease, and obesity. (R. at 13.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) Specifically, the ALJ determined that Plaintiff does not meet or equal listing 1.02, major dysfunction of a joint, and listing 1.04, disorders of the spine. (R. at 14.)

After step three, the ALJ determined Plaintiff's residual capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 14-18.) Based on this evidence, the ALJ determined that Plaintiff retained the capacity to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop and crouch. She can never kneel or crawl. She can be exposed to hazards, such as unprotected heights and moving machinery, no more than occasionally.

(R. at 14-15.)

The ALJ explained this determination by summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff had functional limitations not as severe as Plaintiff alleged. (R. at 16-18.) First, the ALJ evaluated the subjective complaints Plaintiff made during her testimony, including her inability to work due to osteoarthritis and back pain, her inability to sit or stand for long periods of time, and her difficulty in climbing stairs and kneeling. (R. at 15.) The ALJ considered these subjective complaints in light

of Plaintiff's testimony regarding her ability to drive and her usage of a cane, highlighting apparent contradictions between Plaintiff's testimony and the other evidence of record. (R. at 16-18.) Specifically, the ALJ pointed out that although Plaintiff asserted that she could not drive, medical records note that Plaintiff drove to the airport. (R. at 15, 659.) Further, the ALJ underscores that despite Plaintiff stating that she needed a cane, Plaintiff also testified in February 2019 that she does not need a cane. (R. at 15-18.) Furthermore, the ALJ considered Plaintiff's daily activities and medical records, including an October 2016 x-ray and a July 2017 MRI, concluding that this medical evidence supports the ALJ's finding of not disabled. (R. at 15-18.) Second, the ALJ evaluated the medical opinions of Dr. William Rutherford, Dr. Robert McGuffin, and Nurse Practitioner Renee Hammel ("NP Hammel") and assigned each opinion varying weights. (R. at 18.) The ALJ assigned partial weight to Dr. Rutherford's opinion, great weight to Dr. McGuffin's opinion, and little weight to NP Hammel's opinion. (R. at 18.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform her past relevant work. (R. at 19.) The ALJ concluded that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 19.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 20.) The ALJ weighed the testimony of the vocational expert, who opined that, given the residual functional capacity above, Plaintiff could perform the requirements of occupations such as addresser, call-out operator, and charge-account clerk. (R. at 20.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 20-21.) The ALJ, therefore concluded that a finding of "not disabled" was appropriate. (R. at 21.)

# IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that (1) the ALJ erred in assessing Plaintiff's subjective complaints of pain; and (2) the ALJ erred in her assignment of weight to the medical opinions of NP Hammel, Dr. McGuffin, and Dr. Rutherford. (Pl.'s Mem. at 10-18.) For the reasons set forth below, the ALJ did not err in denying Plaintiff's application for benefits.

## A. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Complaints of Pain and the ALJ's Evaluation is Supported by Substantial Evidence.

Plaintiff first challenges the ALJ's assessment of Plaintiff's subjective complaints of pain under the two-step *Craig v. Chater* analysis. (Pl.'s Mem. at 10-15); 76 F.3d at 594. Specifically, Plaintiff argues that the ALJ failed to adequately consider Plaintiff's discussion of her symptoms and abilities, including Plaintiff's ability to drive, ambulate, and participate in activities of daily living. (Pl.'s Mem. at 11-12.) Plaintiff further argues that the ALJ erred in assessing certain objective medical imaging evidence in light of Plaintiff's subjective complaints. (Pl.'s Mem. at 14-15.) Defendant responds that the ALJ properly discredited Plaintiff's subjective complaints because they were inconsistent with medical records and other evidence in the record. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof 13-20, ECF No. 20 ("Def.'s Mem.").)

After step three of the ALJ's analysis, but before deciding whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. §§ 404.1545(a), 416.945(a). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [the claimant's] ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.920(a)(4)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(b)-(c),

416.945(b)-(c). The residual functional capacity formulation must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints of pain and other symptoms. §§ 404.1529(a), 416.929(a).

The ALJ has sole responsibility for evaluating a claimant's subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-prong analysis in accordance with *Craig v. Chater*. 76 F.3d at 594; *see also* §§ 404.1529(a), 416.929(a).

The first prong of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. §§ 404.1529(b), 416.929(a); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second prong and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595.

At the second prong, the ALJ determines the extent to which the pain impairs the claimant's ability to work, which requires the ALJ to consider objective medical and non-medical evidence, as well as the claimant's allegations. *Id.* An ALJ may not rely on objective evidence to discount a plaintiff's subjective complaints and therefore objective evidence is not required to substantiate

complaints of pain and symptoms. *See Arakas*, 983 F.3d at 96. Further, a plaintiff is entitled to rely exclusively on subjective evidence to prove the severity and persistence of her symptoms. *See id*. However, even though a plaintiff may rely on her own testimony, the ALJ may still discredit a plaintiff to the extent that plaintiff's testimony is inconsistent with other evidence. *Craig*, 76 F.3d at 595.

In the instant case, at step one of the *Craig* analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 15.) At step two of the *Craig* analysis, the ALJ outlined Plaintiff's subjective complaints of pain, including Plaintiff's alleged inability to work due to osteoarthritis and back pain, inability to sit or stand for long periods of time, and difficulty in climbing stairs and kneeling. (R. at 15.) Additionally, the ALJ considered Plaintiff's hearing testimony, in which she reported that she uses a cane to help her get up and down without falling and is no longer able to drive. (R. at 15.) The ALJ also recognized Plaintiff's daily activities, including Plaintiff's ability to live alone, care for her own personal needs, prepare meals, wash laundry and dishes, and clean. (R. at 17.) The ALJ compared Plaintiff's testimony and daily activities to the medical record, including medical imaging results and examination findings, and concluded that Plaintiff's complaints regarding the intensity and extent of her limitations were not consistent with the record and that Plaintiff is therefore not disabled. (R. at 15-16.)

In alleging a *Craig* analysis error, Plaintiff argues that the ALJ erred by (1) understating Plaintiff's need for a cane, (2) overstating Plaintiff's ability to perform daily activities, (3) mischaracterizing certain medical imagining results, and (4) misstating Plaintiff's ability to drive. (Pl.'s Mem. at 11-15.) Each of Plaintiff's arguments are addressed in turn below.

1.   <u>The ALJ Properly Considered Plaintiff's Testimony Regarding Her Necessity to Use a Cane.</u>

Plaintiff claims that the ALJ erred by relying on "alleged contradictions" regarding Plaintiff's use of a cane to discount Plaintiff's subjective statements. (Pl.'s Mem. at 11-12.) Plaintiff contends that, contrary to the ALJ's conclusion, Plaintiff's testimony and medical records are consistent and support Plaintiff's impairments. (Pl.'s Mem. at 11-12.) Defendant claims that the ALJ did not rely solely on Plaintiff's testimony regarding use of her cane to discount Plaintiff's subjective complaints but rather properly considered the testimony in light of medical evidence. (Def.'s Mem. at 16-17.)

In formulating Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff did not require a cane, relying on Plaintiff's testimony and behavior from the hearing, and underscoring medical records noting Plaintiff's ability to ambulate without an assistive device. (R. at 15-17, 40-42.) According to Plaintiff's testimony, Plaintiff's doctor directed her to use a cane in 2017 when Plaintiff was still working as a bus driver. (R. at 42.) Plaintiff testified that the doctor directed Plaintiff to use a cane for "getting up and down the bus stops." (R. at 42.) Plaintiff's grandson, however, broke Plaintiff's cane while playing with it and Plaintiff testified that she "didn't get [another] one." (R. at 42.) Plaintiff further testified that "[t]he doctor told me to get a cane, but I can't keep relying on my son to do everything. I don't feel right asking him to buy a cane for me." (R. at 40.) Moreover, at the hearing, Plaintiff "did not present with a cane." (R. at 15.) The ALJ also extensively reviewed Plaintiff's medical records and treatment notes in formulating Plaintiff's residual functional capacity, specifically her need for a cane. In May 2017, Plaintiff was examined by Dr. Minoan Khokhar. (R. at 16, 346.) During this examination, Dr. Khokhar provided that "Patient is . . . able to ambulate without any assistive devices." (R. at 347.) Further, Plaintiff's patient records from 2018 show consistent notes regarding Plaintiff's ability to

ambulate independently. (R. at 588 (providing that Plaintiff is "ambulatory with steady gait"), 590 (stating that Patient left via "walking" and was "ambulatory"), 592 (providing that Plaintiff "[m]oves all extremities" and "[a]mbulates independently"), 599 ("PT ambulated with steady gait upon discharge"), 600 (stating that Plaintiff "[m]oves all extremities," has a "[s]teady gait," and "[a]mbulates independently").) Based on this evidence, the ALJ determined that Plaintiff did not need a cane. (R. at 15-18.)

The Court finds that substantial evidence supports the ALJ's decision to omit a cane from Plaintiff's residual functional capacity. The ALJ relied on Plaintiff's own testimony, as well as medical examination records, to support the ALJ's conclusion that Plaintiff was able to ambulate independently. (R. at 15-17, 346-47, 590, 592, 599-600.) Therefore, the ALJ's statement regarding Plaintiff and her cane usage finds support in the record, and for this reason, is supported by substantial evidence. Plaintiff's challenge to the ALJ's statement therefore lacks merit and the ALJ did not improperly discount Plaintiff's subjective statements.

### 2.   The ALJ Properly Considered Plaintiff's Daily Activities.

Plaintiff next claims that the ALJ improperly considered Plaintiff's activities of daily living. (Pl.'s Mem. at 12-13.) Specifically, Plaintiff alleges that the ALJ did not properly consider the difficulty Plaintiff has in getting up, the necessity for Plaintiff to elevate her leg, Plaintiff's difficulty maneuvering the steps that lead to her home, and other self and home care activities. (Pl.'s Mem. at 12-14.) Defendant claims that the ALJ properly analyzed Plaintiff's daily activities considering the medical and other evidence in the record. (Def.'s Mem. at 17-19.)

When evaluating the intensity, persistence, and limiting effects of a plaintiff's symptoms, the ALJ may consider the plaintiff's daily activities. §§ 404.1529(c), 416.929(c); *see Arakas*, 983 F.3d at 99. "An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th

Cir. 2018). Given that a plaintiff's daily activities are linked to her symptoms, it logically follows that a plaintiff's inability to sustain full-time work due to pain is often consistent with her ability to carry out daily activities. *See Arakas*, 983 F.3d at 101.

During the February 2019 hearing, Plaintiff testified that she was able to climb the three steps to get into her home, attend to self-care such as showering, getting dressed, cooking meals, and doing dishes.(R. at 36-55.) However, Plaintiff also testified that she could not sit or stand for long periods of time, had difficulty getting up, needed to elevate her leg, and could not do all the cleaning or cooking by herself. (R. at 36-55.)

The ALJ compared Plaintiff's alleged daily activities to the medical records and concluded that Plaintiff's statements about intensity, persistence, and limiting effect of her symptoms are "not entirely consistent with the medical evidence and other evidence in the record." (R. at 15.) The ALJ acknowledged that, despite Plaintiff's impairments, the medical evidence of record "indicates that . . . the claimant is capable of performing a range of exertionally sedentary work." (R. at 15.) The ALJ's evaluation is properly supported by the medical evidence of record and Plaintiff's testimony. Plaintiff's testimony regarding her ability to climb the steps to her home is supported by several medical examinations throughout 2018, during which Plaintiff was able to ambulate independently, without an assistive device, and reported no limitations in her activities of daily living. (R. at 17, 592, 600.) Furthermore, while diagnostic images revealed some osteoarthritis in the right knee and degenerative disc disease in the lumbar spine, examinations generally revealed intact strength in Plaintiff's upper and lower extremities, intact sensation, and no cyanosis, clubbing, or edema. (*See, e.g.,* R. at 15-17, 571-72, 623, 664, 675, 668-69.) For example, a February 2018 examination revealed knee tenderness to palpation and crepitus, but Plaintiff had no significant decrease in range of motion, her knees were stable, and she had intact sensation. (R.

at 17, 571-72.) During that examination, Plaintiff also reported that she did not want to try additional treatments for her knee pain. (R. at 572.) Other examinations reveal similar findings, including an examination in June 2018 (R. at 17, 664), September 2018 (R. at 17, 668-69), and January 2019 (R. at 17, 675).

This Court finds that the ALJ properly reviewed Plaintiff's daily activities in assessing whether they were consistent with Plaintiff's subjective complaints. The findings in Plaintiff's medical records support the ALJ's conclusion that Plaintiff's daily activities are not limited to the extent that Plaintiff alleges. Further, Plaintiff's argument regarding other evidence supporting a contrary finding is without merit. This is because an ALJ's decision must be affirmed if supported by substantial evidence, regardless if the reviewing court believes there is substantial evidence also supporting a contrary result. *See, e.g., Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972). This Court does not reweigh conflicting evidence or substitute its judgment for that of the ALJ; if reasonable minds may differ, the responsibility in determining the decision lies with the ALJ. *See Johnson*, 434 F.3d at 653. Thus, this Court finds that the ALJ did not err in her assessment of Plaintiff's daily activities.

3. The ALJ Properly Analyzed Objective Imaging Evidence.

Next, Plaintiff claims that the ALJ improperly analyzed objective evidence, including an October 2016 x-ray and a July 2017 MRI. (Pl.'s Mem. at 14.) Plaintiff specifically claims that the ALJ downplayed the severity of Plaintiff's condition as reflected in the images by failing to discuss certain findings. (Pl.'s Mem. at 15.) Plaintiff also claims that the ALJ failed to order updated imaging. (Pl.'s Mem. at 15.) Defendant argues that an ALJ is not required to use any "particular language or format" in conducting a review of medical evidence. (Def.'s Mem. at 19-21 (quoting *Gassaway v. Colvin*, 2013 WL 2389894, at *6 (E.D. Va. May 29, 2013).)

Two medical imagining results are at issue—an October 2016 x-ray of Plaintiff's knee and a July 2017 MRI of Plaintiff's back. The October 2016 x-ray report is a 10-page document that includes a medical summary, detailed medical findings, and radiology results. (R. at 387-97.) The medical summary states that there is "no evidence of acute fracture or dislocation." (R. at 396.) The medical findings explain that there is "[tricompartmental osteoarthritis" and a "myositis ossificans upper posterior calf adjacent to the fibula." (R. at 396.) Detailing further the osteoarthritis, the radiology results also indicate that the osteoarthritis in the medial and lateral compartments is moderate while the osteoarthritis in the patellofemoral compartment is severe. (R. at 396.) In considering the x-ray and report, the ALJ repeated verbatim the language used in the medical summary and findings that there is "no evidence of acute fracture or dislocation" (R. at 15), and that Plaintiff suffers from "tricompartmental osteoarthritis" (R. at 15). The ALJ does not provide additional detail, such as reporting that the medical findings further describe the degree of osteoarthritis in the different compartments of the knee as either "moderate" or "severe." (R. at 396.)

The July 2017 MRI report includes a long list of findings and a medical summary. (R. at 515.) The medical summary reports the following regarding Plaintiff's back: "Spondylolisthesis at the L4-5 with disc protrusion/extrusion posterior to the L4 vertebral body. There is associated moderate canal and severe bilateral foraminal stenosis at L4-5." (R. at 515.) The medical findings include additional detail, including "anterolisthesis of L4 on L5 with discogenic marrow degenerative changes," "disc extrusion at this level," "anterollsthesis measur[ing] 6mm, moderate canal and severe bilateral foraminal stenoses at L4-5," "no fracture, no distal cord signal abnormality," and "disc bulge at T12-L1 with mild canal stenosis." (R. at 515.) Similar to the ALJ's summary of the x-ray report, the ALJ closely summarizes the language used in the MRI

report, characterizing the MRI as showing "degenerative disc disease and canal and bilateral foraminal stenosis." (R. at 16.) The ALJ's summary does not further detail, however, that the canal stenosis is "moderate" while the bilateral foraminal stenosis is "severe." (R. at 515) Nor does the ALJ repeat the more detailed information found in the medical summary, as outlined above. (R. at 16, 515.)

The Court finds no error in the ALJ's summary or analysis of the x-ray or MRI. This Court is required to view the ALJ's decision as a whole rather than to conduct a piecemeal assessment of specific sentences. *Wilkins v. Sec'y, Dep't v. Health of Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Therefore, even if "the ALJ could arguably have discussed certain evidence more extensively or organized portions of his analysis more effectively, these considerations do not invalidate the ALJ's decision." *Finley v. Astrue*, No. 5:08-cv-209, 2009 WL 2489264, at *10 (E.D.N.C. Aug. 13, 2009). Here, as described above, the ALJ explicitly considered the medical evidence at issue. The ALJ summarized the evidence, often quoting the language used in the report verbatim. Although Plaintiff argues that the ALJ's failure to use the specific adjectives found in the medical findings was error, the Court disagrees. "There is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Gassaway v. Colvin*, No. 1:12-cv-982, 2013 WL 2389894, at *6 (E.D. Va. May 28, 2013) (alteration in original) (quoting *Clark v. Comm'r of Soc. Sec.*, No. 09-cv-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010)). The ALJ's summary of the MRI and x-ray results fairly reflects the substance of the medical imaging findings as a whole and supports the ALJ's conclusion that imaging evidence showed no acute distress and, despite evidence of degenerative disc disease and foraminal stenosis, was generally

unremarkable. (R. at 15-16.) For these reasons, the Court finds that the ALJ did not err in her assessment of the October 2016 x-ray or July 2017 MRI.

Finally, Plaintiff's argument that the ALJ erred by failing to obtain updated imaging is without merit. The Social Security administrative hearing process is not adversarial and the ALJ's role is to both decide issues and to develop the record. *See Pearson,* 810 F.3d at 210 (citing *Cook v. Heckler,* 783 F.2d 1168, 1173–74 (4th Cir. 1986)); *see also Gray v. Apfel*, 191 F.3d 447 (4th Cir. 1999) (". . . Social Security ALJ's are not simply arbiters, but also inquisitors."). The ALJ, for example, has a duty to investigate the facts and develop the record "independent of the claimant or his counsel." *Pearson*, 810 F.3d at 210 (4th Cir. 2015) (citing *Cook,* 783 F.2d at 1173–74). "However, an ALJ is 'not required to function as the claimant's substitute counsel, but *only to develop a reasonably complete record*.'" *Eva L. v. Saul*, No. 1:20CV0162, 2020 WL 5648324, at *18 (E.D. Va. Sept. 22, 2020) (emphasis added) (quoting *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994)); *see also Zook v. Comm'r of Soc. Sec.*, No. 2:09CV109, 2010 WL 1039456, at *4 (E.D. Va. Feb. 25, 2010) (same), *report and recommendation adopted sub nom. Zook v. Astrue*, No. 2:09CV109, 2010 WL 1039830 (E.D. Va. Mar. 18, 2010). The claimant still retains the burden to prove that he or she is disabled. §§ 404.1512(a)(1), 416.912(a)(1). The regulations therefore require the claimant to "inform . . . or submit" to the Commissioner all evidence known to the claimant that relates to the alleged disability. *Id*. "This duty is ongoing and requires [plaintiff] *to disclose any additional related evidence about which you become aware*." *Id*. (emphasis added).

This Court finds that the ALJ developed a reasonably complete record. The evidence of record included medical imaging results, as well as examination and treatment notes. There is no suggestion in Plaintiff's medical record that further medical imagining would show findings substantially different, and more adverse, than those findings reflected in the existing x-ray and

16

MRI. Moreover, nothing in the record suggests that additional medical imagining existed, nor did Plaintiff inform the ALJ of such imagining. Lastly, Plaintiff's brief does not develop what results additional imaging would have shown or set forth, and instead only alleges that the ALJ should have ordered new imaging. Therefore, the Court finds that the ALJ did not err in failing to order updated imaging.

### 4. Any Error in the ALJ's Interpretation of a Medical Record Regarding A Trip to the Airport was Harmless.

Lastly, Plaintiff claims that the ALJ erred by relying on "alleged contradictions" regarding Plaintiff's ability to drive to discount Plaintiff's subjective statements. (Pl.'s Mem. at 11-12.) Defendant claims that the ALJ did not rely solely on the testimony regarding driving to discount Plaintiff's subjective complaints, but rather properly considered the testimony in light of medical evidence and Plaintiff's daily activities. (Def.'s Mem. at 16-17.)

During the February 2019 hearing, Plaintiff testified that she stopped bus driving in September 2017. (R. at 13, 37.) According to Plaintiff, once she stopped bus driving, she stopped driving all together, stating "I don't have a vehicle, so I don't drive." (R. at 37.) Plaintiff further provided that her "niece or [her] son comes and takes [her] places if [she has] to go to doctors' visits." (R. at 37.) According to a medical chart record from April 2018, however, Plaintiff canceled a medical appointment explaining that she has "family coming in [she has] to pick up from the airport at Richmond airport at 1pm." (R. at 659.)

In reviewing Plaintiff's alleged pain and reported abilities, the ALJ stated, "[a]t the hearing, the claimant stated that she does not drive, but in April 2018, she drove to the airport to pick up family." (R. at 15, 659.) According to Plaintiff, the ALJ's statement misinterprets the medical record, and ALJ erred by assuming "pick up from airport" meant that Plaintiff herself drove to the airport. (Pl.'s Mem. at 11.) While the ALJ's inference, based on a statement in Plaintiff's medical

records, may be misplaced, the ALJ only relied on this statement, in part, in forming her conclusion. As discussed above, the ALJ relied on all of the evidence of record, including Plaintiff's testimony, reported activities, and medical record, to assess Plaintiff's credibility.

To the extent that the ALJ misinterpreted the statement in Plaintiff's medical record regarding Plaintiff's ability to drive, the Court finds that such an error would be harmless. The burden of establishing a harmful error rests on "the party attacking the agency's determination." *Shineski v. Sanders*, 556 U.S. 396, 409 (2009). In determining the significance of an error, courts must consider, among other factors, "an estimation of the likelihood that the result would have been different." *Id.* at 411. Here, the ALJ relied on the entirety of Plaintiff's record, as discussed above, in assessing Plaintiff's subjective complaints of pain. Thus, if the line referencing Plaintiff "picking" family up from the airport not been included in Plaintiff's medical record, the ALJ would have undoubtedly reached the same conclusion. Given that the ALJ relied on additional evidence to support her conclusion regarding Plaintiff's subjective complaints of pain, the error—if any— in the ALJ's interpretation of Plaintiff's medical record was harmless.

**B. The ALJ Did Not Err is Assessing the Opinion Evidence, and the ALJ's Evaluation is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred in assessing the medical opinions of Dr. Rutherford, Dr. McGuffin, and NP Hammel. (Pl.'s Mem. at 16-19.) Defendant responds that substantial evidence supports the ALJ's evaluations of NP Hammel, Dr. Rutherford, and Dr. McGuffin's opinions. (Def.'s Mem. at 20-28.)

In considering and weighing medical opinions from "acceptable medical sources," such as licensed physicians, the ALJ must determine the appropriate weight of the opinion using the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical

18

record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. §§ 404.1527(c), 416.927(c); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson*, 434 F.3d at 654); SSR 06-03P, 2006 WL 2329939, at *3 (Aug. 9, 2006).[4] "While an ALJ is not required to set forth a detailed factor-by-factor analysis . . . it must nonetheless be apparent from the ALJ's decision that he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). Additionally, when considering opinions from "other sources" who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and chiropractors, the ALJ can consider these same factors, although not every factor may apply; the evaluation will "depend[] on the particular facts in each case." SSR 06-03P, 2006 WL 2329939, at *5; § 404.1527(f)(1). Generally, a reviewing court should not disturb an ALJ's decision regarding the weight given to a medical opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

Here, there is substantial evidence to support the ALJ's evaluation of the medical opinions. The ALJ considered the evidence and articulated sufficient reasons for the weight she assigned to the medical opinions of Dr. Rutherford, Dr. McGuffin, and NP Hammel. (R. at 18.) Plaintiff's arguments regarding each of these medical opinions are addressed in turn below.

---

[4]     In March 2017, the Social Security Administration rescinded SSR 06–03p, but the rescission was only effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p, 82 Fed. Reg. 15263 (Mar. 27, 2017). Therefore, Plaintiff's claim is still subject to SSR 06–03p.

1.   <u>The ALJ Properly Considered Dr. Rutherford's Opinion.</u>

First, Plaintiff claims that the ALJ improperly evaluated the opinion from state agency physician Dr. Rutherford. (Pl.'s Mem. at 16-19.) According to Plaintiff, the ALJ erred by affording partial weight to Dr. Rutherford's opinion, given Dr. Rutherford's non-examining relationship with Plaintiff and Dr. Rutherford's "curt notations" and otherwise "lacking" evaluation. (Pl.'s Mem. at 17.) Defendant responds that the ALJ "reasonably assigned only partial weight" to Dr. Rutherford's opinion and that the ALJ properly explained this assessment. (Def. Mem. at 24-25.)

Dr. Rutherford, a State agency medical consultant, did not provide treatment to Plaintiff, but did provide an evaluation of Plaintiff's impairments and their severity based on his review of her case's record. (R. at 98-104.) In his opinion, Dr. Rutherford states that Plaintiff can stand and/or walk for two hours in an eight-hour day, and that she can perform sedentary work with no more than occasionally climbing ramps, stairs, and crawling; no climbing ladders, ropes, or scaffolds; and frequent balancing, stooping, kneeling, and crouching. (R. at 103-104). The opinion also provides that Plaintiff can occasionally lift twenty pounds. (R. at 103.)

After considering Plaintiff's medical record, including Dr. Rutherford's evaluation, the ALJ assigned Dr. Rutherford's opinion partial weight. (R. at 18.) The ALJ determined that Dr. Rutherford's opinion regarding Plaintiff's ability to stand and walk for two hours in an eight-hour day, as well as Plaintiff's postural limitations, were sufficiently supported and consistent with the record. (R. at 18.) While Dr. Rutherford's opinion predated Plaintiff's alleged onset date, the ALJ explained that, given the two month temporal proximity, and that "physical examination findings subsequent to this date do not show a worsening of [Plaintiff's] ability to sit, stand, walk and perform postural activities," Dr. Rutherford's opinion was afforded partial weight. (R. at 18.) The ALJ did, however, explain that "lesser weight is afforded to the lifting and carrying limitation"

because "the combination of the claimant's obesity, lumbar spine degrative changes and knee osteoarthritis support that [Plaintiff] could not lift more than ten pounds." (R. at 18.)

This Court finds that the ALJ properly evaluated Dr. Rutherford's opinion because the ALJ adequately demonstrated that she considered the factors set forth in § 404.1527(c)(1)-(6) and § 416.927(c)(1)-(6) in determining how much weight to assign to Dr. Rutherford's opinion. The ALJ acknowledged Dr. Rutherford's non-treating source relationship with Plaintiff and further recognized that Dr. Rutherford's opinion predated the amended alleged onset date, demonstrating that the ALJ considered the length, nature and extent of the treatment relationship as well as the frequency of examination. (R. at 18.) Further, the ALJ's assessment of Dr. Rutherford is generally consistent and supported by the record. For instance, a June 2017 function report stated that Plaintiff could prepare meals, clean, read, and spend time with family, but that she had trouble standing, walking, climbing stairs, and kneeling. (R. at 217-22). Further, she did not claim to use a cane or another assistive device. (R. at 223.) Additionally, medical examinations from 2018 support this finding. For example, a February 2018 examination revealed knee tenderness to palpation and crepitus, but Plaintiff had no significant decrease in range of motion, her knees were stable, and she had intact sensation. (R. at 17, 571-72.) During that examination, Plaintiff also reported that she did not want to try additional treatments for her knee pain. (R. at 572.) Finally, the record reflects that Dr. Rutherford is a state agency medical consultant who has great knowledge of the Administration's standards and procedures.[5] Accordingly, this Court finds that the ALJ did not err in assigning Dr. Rutherford partial weight.

---

[5]     State agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. *See* §§ 404.1527(e), 404.1513a(b)(1), 416.913a(b)(1).

2.  The ALJ Properly Considered Dr. McGuffin's Opinion.

Second, Plaintiff claims that the ALJ improperly evaluated the opinion from state agency physician Dr. McGuffin. (Pl.'s Mem. at 16-19.) Specifically, Plaintiff argues that Dr. McGuffin's report is "insufficient" and "contains minimal explanation," and that it was error for the ALJ to assign "great weight" to the opinion. (Pl.'s Mem. at 16.) Defendant responds that there is substantial evidence to support the ALJ's evaluation of Dr. McGuffin's opinion and that the ALJ's evaluation "was not only proper but required under the regulations." (Def. Mem. at 22-24.)

Dr. McGuffin's opinion generally affirmed the findings within Dr. Rutherford's opinion, with the exception of Plaintiff's lifting restrictions. (R. at 18, 116-18.) For instance, Dr. McGuffin similarly found that Plaintiff can stand and walk for two hours in an eight-hour day. (R. at 118.) Further, Dr. McGuffin found that Plaintiff can perform only sedentary work with no more than occasionally climbing ramps, stairs and crawling; no climbing ladders, ropes, or scaffolds; and frequent balancing, stooping, crouching, and kneeling. (R. at 117-118.) Unlike Dr. Rutherford, however, Dr. McGuffin opined that Plaintiff could occasionally and frequently lift or carry ten pounds, instead of twenty pounds. (R. at 117.)

The ALJ determined that Dr. McGuffin's opinion was entitled to great weight. (R. at 18.) The ALJ explained that Dr. McGuffin's opinion relating to Plaintiff's ability to stand and walk, as well as Plaintiff's postural limitations, were sufficiently supported and consistent with the record. (R. at 18.) Because Dr. McGuffin's opinion provided for a ten-pound lifting restriction, instead of Dr. Rutherford's twenty-pound restriction, the ALJ assigned Dr. McGuffin's opinion more weight, explaining that the medical evidence supported the more limited lifting restriction. (R. at 18.)

The ALJ's decision evidences that the ALJ considered the factors set forth in § 404.1527(c)(1)-(6) and § 416.927(c)(1)-(6) in determining how much weight to assign to Dr. McGuffin. The ALJ explained that Dr. McGuffin, as a State agency medical consultant, "has

program knowledge of the Administration's standards and procedures." (R. at 18.) The ALJ further explained that Dr. McGuffin's opinion is consistent and supported by the record. Specifically, throughout 2018, Plaintiff ambulated independently, had a steady gait, and could perform her activities of living without limitation. (R. at 18, 517, 664, 668, 675.) This record evidence supports Dr. McGuffin's assessment regarding Plaintiff's standing, walking, and postural limitations. Further, the ALJ determined that Plaintiff's impairments, in combination, support a lifting restriction of no more than ten pounds—a limitation in accordance with Dr. McGuffin's opinion. (R. at 18.) Accordingly, this Court finds that the ALJ did not err in assigning Dr. McGuffin great weight.

### 3. The ALJ Properly Considered NP Hammel's Opinion.

Lastly, Plaintiff argues that the ALJ improperly evaluated the opinion of NP Hammel by assigning her opinion little weight. (Pl.'s Mem. at 16-19.) Plaintiff claims that NP Hammel's opinion is supported by the record and that the ALJ erred in failing to develop a complete medical history. (Pl.'s Mem. at 17-18.) Defendant claims that there is substantial evidence to support the ALJ's evaluation of NP Hammel based on the medical records, the qualifications of NP Hammel, and the limited history between NP Hammel and Plaintiff. (Def. Mem. at 22-24.)

On March 26, 2018, NP Hammel completed an assessment of Plaintiff, outlining Plaintiff's impairments and limitations. (R. at 580-82.) NP Hammel's opinion provides that Plaintiff frequently experiences severe symptoms that interfere with Plaintiff's ability to perform work-related tasks and can perform less than sedentary work. (R. at 581-582.) Specifically, NP Hammel opined that Plaintiff can only work for one hour in a seated position and needs breaks every thirty minutes for thirty minutes. (R. at 581-582.) NP Hammel also indicated that Plaintiff has limitations using her hands, fingers, and arms bilaterally, and that Plaintiff would be absent from work for four days a month. (R. at 581-582.)

The ALJ gave NP Hammel's opinion little weight. (R. at 18.) The ALJ determined that, because NP Hammel is a nurse practitioner, she is not one of the "acceptable medical sources" under the regulations and therefore cannot be entitled to controlling weight. (R. at 18); *see* 20 C.F.R. §§ 404.1527(f) and 416.927(f). Further, the ALJ noted that NP Hammel's opinion is not entitled to great weight because her opinion is contradicted by other substantial evidence in the record. (R. at 18.) The ALJ noted that the objective medical evidence in the record and Plaintiff's reported daily activities do not support the degree of limitation provided by NP Hammel. (R. at 18.) Specifically, the ALJ concluded that NP Hammel's daily working hour restrictions and projected absences are not supported by Plaintiff's reported restrictions in her activities of daily living. (R. at 18.) Additionally, the ALJ found that NP Hammel failed to document positive upper extremity findings to substantiate the provided manipulative limitations. (R. at 18.) Lastly, the ALJ underscored that the only physical examination performed by NP Hammel in the record was performed three months *after* NP Hammel completed her written assessment. (R. at 18, 580-82.)

This Court finds that the ALJ properly assessed NP Hammel's opinion. At the outset, the ALJ acknowledged NP Hammel's role as a nurse practitioner, a "non-acceptable" medical source. *See* §§ 404.1527(a),(f), 416.927(a), (f); SSR 06-03P, 2006 WL 2329939, at *2 ; *see also Foster v. Astrue*, 826 F. Supp.2d 884, 886 (E.D. N.C. 2011) (describing medical professionals "who support physicians, including physician assistants, nurse practitioners, and licensed clinical social workers" as non-acceptable medical sources). Opinions from medical sources who are not acceptable medical sources, but that nevertheless "may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable sources," are assessed using the factors set forth in § 404.1527(c)(1)-(6) and § 416.927(c)(1)-(6). §§ 404.1527(f), 416.927(f). In her decision, the ALJ applied these factors by considering the limited relationship between NP

Hammel and Plaintiff—namely, that the only physical examination performed by NP Hammel present in the record occurred three months following NP Hammel's provided opinion. (R. at 18, 580-82, 663-65.) Moreover, the ALJ assessed the supportability and consistency of NP Hammel's opinion and found that the medical evidence of record, coupled with Plaintiff's reported daily activities, did not support the restrictions provided by NP Hammel. (R. at 18.) Finally, the ALJ determined that NP Hammel's own "findings were unremarkable" and did not support NP Hammel's proposed restrictions. (R. at 18.)

Plaintiff also argues that the ALJ erred by failing to fully inquire into the extent of NP Hammel's treating relationship with Plaintiff. During Plaintiff's hearing, Plaintiff made suggestions that she was seen by NP Hammel in 2017. (R. at 40 (referencing that NP Hammel, back in 2017, recommended Plaintiff get a cane).) The record, however, does not support Plaintiff's contention. When the ALJ brought this to Plaintiff's attention during the February hearing, Plaintiff's counsel conceded that there was nothing in the record about visits to NP Hammel in 2017. (R. at 41.) As stated earlier, an ALJ is not required to function as plaintiff's counsel and thus is only required to develop a *reasonably* complete record. *Eva*, 2020 WL 5648324, at *18. During the hearing, the ALJ, when inquiring about NP Hammel's treatment notes in Plaintiff's record, stated, "I've got the medical source statement, Counsel, at 16F by nurse practitioner, Hammel, and then 21F. Am I missing something, or is there – that's it for . . . CrossOver Clinic. I don't see anything from 2017." (R. at 41.) Plaintiff's counsel responded affirmatively, stating "I believe that's it." (R. at 41.) This exchange underscores that the ALJ made reasonable efforts to confirm that Plaintiff's record contained adequate information that appropriately reflected Plaintiff's medical care. Contrary to Plaintiff's assertion, the ALJ

25

adequately considered Plaintiff's treatment history and medical record when assigning weight to NP Hammel's opinion.

Lastly, Plaintiff's argument that there is other evidence that supports assigning NP Hammel great weight is without merit because the Court's role is to determine whether the ALJ's decision is supported by substantial evidence, not if there is other evidence to support the contrary position. *See*, *e.g.*, *Estep*, 459 F.2d at 1017. The Court may not reweigh the evidence. As long as there is substantial evidence to support the ALJ's decision—which there is in this case—then this Court must affirm it, even if the Court would have decided the case differently. 42 U.S.C. § 405(g); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Thus, Plaintiff's argument regarding other evidence that supports a contrary position is without merit.

Accordingly, the ALJ appropriately afforded NP Hammel's opinion little weight. The ALJ properly considered NP Hammel's opinion and articulated numerous reasons for the weight assigned. There is substantial evidence in the record to support the weight assessment and the ALJ, therefore, did not err in assigning NP Hammel's opinion little weight.

## V. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment (EFC No. 18) be DENIED, that Defendant's Motion for Summary Judgement (EFC No. 20) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

An appropriate Order consistent with this Memorandum Order shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/ _____

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: August 27, 2021

26